UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x          06 Civ. 4388 (BSJ) (DFE)
GLENN COREY ELFE,

                                  Plaintiff,


               -against-

THE CITY OF NEW YORK, et al.,

                                  Defendants.


-------------------------------------------------------------------x


## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT


Anthony Ofodile
Ofodile & Associates P.C.
498 Atlantic Avenue
Brooklyn, NY 11217
Telephone No. 718-852-8300

TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES.................................................................................................ii

PRELIMINARY STATEMENT.........................................................................................1

STATEMENT OF FACTS.................................................................................................1

STANDARD OF REVIEW.................................................................................................5

ARGUMENT.......................................................................................................................6

    POINT I
    Defendant's In Closing The Door On Plaintiff
    Used Excessive Force.................................................................................6

    POINT II
    Defendant's Denied Plaintiff Medical Care..............................................9

        A. Plaintiff has demonstrated a
          sufficiently serious injury.................................................................9

        B. Defendant's acted with a
          culpable state of mind....................................................................11

    POINT III
    Plaintiff Exhausted his remedies as required
    by the PLRA..............................................................................................13

    POINT IV
    Defendants are not entitled to Qualified Immunity...................................15

    POINT V
    Defendants Have Not Established That State Law
    Claims Must be Dismissed.........................................................................17

    POINT VI
    New York Correction Law § 24 Does Not Apply
    To City Employees....................................................................................17

CONCLUSION...................................................................................................................18

TABLE OF AUTHORITIES

Cases                                                                                    Pages

Abbas v. Senkowski,
      2005 U.S. Dist. LEXIS 32398, 20-21 (N.D.N.Y Sept. 9, 2005).......................................9

Abney v. McGinnis,
      2004 U.S. App. LEXIS 17238 (2d. Cir. Aug. 18, 2004)...........................................13, 14

Anderson v. Creighton,
      483 U.S. 635, 638, 107 S. Ct. 3034, 97 L. Ed. 2d 523 (1987)..................................15, 16

Anderson v. Liberty Lobby, Inc.,
      477 U.S. 242, 255 (1986)...................................................................................6

Back v. Hastings on Hudson Union Free Sch. Dist.,
      365 F.3d 107, 129 (2d Cir. 2004)................................................................ ....16)

Baker v. Coughlin,
      77 F.3d 12, 15 (2d Cir. 1996)...........................................................................17

Berry v. Kerik,
      366 F.3d 85, 88 (2d Cir. 2003)..........................................................................13

Blyden v. Mancusi,
      186 F.3d 252, 262 (2d Cir. 1999.................................................................. .7

Brady v. Griffith, 1
      998 U.S. Dist. LEXIS 18442, No. 95 Civ. 2364 (JFK),
      (S.D.N.Y. Nov. 23, 1998)..................................................................................9

Chance v. Armstrong,
      143 F.3d 698, 702 (2d Cir. 1998)...................................................................9, 10

Correspondent Servs. Corp., v. First Equities Corp.,
      338 F.3d 119 (2d Cir. 2003).............................................................................17

Cronin v. Aetna Life Ins., Co.,
      46 F.3d 196 (2d Cir. 1995)................................................................................6

Dean v. Coughlin,
       623 F. Supp.  392, 404 (S.D.N.Y. 1985)......................................................10

Donahue v. Windsor Board of Fire Commissioners,
    834 F.2d 54, 57 (2nd Cir. 1987)..............................................................................5

Evering v. Rielly,
    2001 U.S. Dist. LEXIS 15549, No. 98 Civ. 6718,
    2001 WL 1150318, at *6 (S.D.N.Y. Sept. 28, 2001).....................................................8

Farmer v. Brennan ,
    511 U.S. 825, 842, 128 L. Ed. 2d 811, 114 S. Ct. 1970 (1994)............................11, 12

Giano v. Goord,
    2004 U.S. App. LEXIS 17235 (2d. Cir. Aug. 18, 2004)...............................................13

Gallo v. Prudential Residential Services Ltd. Partnership,
    22 F.3d 1219, 1223 (2nd Cir. 1994).........................................................................6

Gregg v. Georgia,
    428 U.S. 153, 173,  [*398]  49 L. Ed. 2d 859, 96 S. Ct. 2909 (1976)..........................6

Griffin v. Crippen,
    193 F.3d 89, 91 (2d Cir. 1999)................................................................................7

Harris v. Provident Life & Accident Insurance Company,
    310 F.3d 73, 78 (2nd Cir. 2002)..............................................................................5

Hathaway v. Coughlin,
    37 F.3d 63, 66 (2d Cir. 1994).............................................................................9, 10

Hudson v. McMillian,
    503 U.S. 1, 7, 117 L. Ed. 2d 156, 112 S. Ct. 995 (1992)...........................................7

Hope v. Pelzer,
    536 U.S. 730, 739, 122 S. Ct. 2508, 153 L. Ed. 2d 666 (2002)................................16

Ierardi v. Sisco,
    119 F.3d 183, 186 (2d Cir. 1997)..........................................................................17

Johnson v. Harris,
    479 F. Supp. 333 (S.D.N.Y. 1979)........................................................................10

Johnson v. Testman,
    2004 U.S. App. LEXIS 17236 (2d. Cir. Aug. 18, 2004)..............................................13

Koehl v. Dalsheim,
  85 F.3d 86, 88 (2d Cir. 1996)....................................................................10

Luna v. Pico,
  356 F.3d 481, 490 (2d Cir. 2004)..............................................................16

Mojias v. Johnson,
  351 F.3d 606, 609-10 (2d Cir. 2003)..........................................................14

Nance v. Kelly,
  912 F.2d 605, 607 (2d Cir. 1990) ...............................................................9

Nowak v. Ironworkers Local 6 Pension Fund,
  81 F.3d 1182 (2d Cir. 1996).......................................................................17

Papineau v. Parmley,
  465 F.3d 46, 55-56 (2d Cir. 2006)..............................................................16

Parker v. Rocco,
  252 F.3d 663 (2d Cir. 2001)........................................................................17

Rhodes v. Chapman,
  452 U.S. 337, 344-45, 69 L. Ed. 2d 59, 101 S. Ct. 2392 (1981)....................6

Romano v. Howarth,
  998 F.2d 101, 105 (2d Cir. 1993)................................................................7

Saucier v. Katz,
  533 U.S. 194, 201, 121 S. Ct. 2151, 150 L. Ed. 2d 272 (2001)....................16

Scott v. Coughlin,
  344 F.3d 282, 291 (2d Cir. 2003)................................................................7

Sims v. Artuz,
  230 F.3d 14, 20 (2d Cir. 2000)................................................................6, 8

Snider v. Melindez,
  199 F.3d at 108............................................................................................14

Todaro v. Ward,
  565 F.2d 48, 52 (2d Cir. 1977)...................................................................10

iv

Williams v. Vincent,
　　508 F.2d 541 (2d Cir. 1974)........................................................................10

Williams v. M.C.C. Inst.,
　　1999 U.S. Dist. LEXIS 3871 (S.D.N.Y. Mar. 25, 1999)................................10

Wilson v. Seiter,
　　501 U.S. 294, 299, 115 L. Ed. 2d 271, 111 S. Ct. 2321 (1991)............................7, 9, 11

Ziemba v. Wezner, 366 F.3d at 161........................................................................13

Statutes                                                                                                    Pages

PLRA, 42 U.S.C. § 1997e(a)........................................................................13

Rule 56 (c) of Federal Rules of Civil Procedure........................................................6

New York Correction Law § 24........................................................................17

_____

## **PRELIMINARY STATEMENT**

Plaintiff Glenn Corey Elfe submits this Memorandum of Law in opposition to Defendants

Memorandum of Law in support of their motion for summary judgment for the following

reasons; Plaintiff has demonstrated sufficient facts to show 1) that Defendant's in closing the cell

door on Plaintiff used excessive force, 2) Defendant's denied Plaintiff medical care in violation

of the Eighth Amendment 3) Plaintiff has exhausted his administrative remedies as required by

the Prison Litigation Reform Act (PLRA); 4) Defendants are not entitled to qualified immunity

on any of the federal claims; 5) Defendant's have not established that state law claims must be

dismissed; and 6) New York Correction Law §24 does not apply to city employees.


## **STATEMENT OF FACTS**

On December 29, 2005, Plaintiff Glenn Corey Elfe, an inmate at GRVC on Rikers Island

was sleeping in his cell, when his cell door suddenly opened startling him out of his sleep.  See

Deposition transcript of Glenn Corey Elfe (hereinafter referred to as "Elfe Dep."), annexed to

Affirmation of Anthony C. Ofodile (hereinafter referred to as "Ofodile Aff.) as Exh.1, p. 34-35.

The cell doors were opened for commissary.  Plaintiff was surprised to see his cell door opened

at 5:40 in the morning, since he did not indicate to the correction officers that he wanted to go to

commissary.  Elfe Dep., p. 39.  Plaintiff was also concerned for his safety since his cell door was

left open where other inmates could have access to Plaintiff.  Id, p. 39.  Concerned for his own

safety, Plaintiff standing between his cell door yelled two stories down to the correction officers

sitting in a station called the bubble where the cell door controls are located for his cell door to

1

be closed.  Elfe Dep., pp. 35-37.  There were two female correction officer sitting in the bubble at the time whom Plaintiff described as a light skinned officer and a dark skinned officer (whom Plaintiff believes to be Mrs. Bowers).  Elfe Dep., p. 36.  In response to Plaintiff's request the correction officers yelled back "Wait, Wait. Elfe Dep., p. 40.  Plaintiff complied with the officers directive and waited for approximately five minutes.  Elfe Dep., pp. 40-41.  When Plaintiff's door still didn't close after five minutes, Plaintiff once again stood halfway outside of his cell door, to yell to the correction officer inside the control room to close his cell door.  The officers repeatedly told Plaintiff to wait.  Then without any warning Plaintiff's cell door closed in on Plaintiff.  As soon as the cell doors began closing in, Plaintiff tried to move out of the way.  However the cell doors closed faster than Plaintiff could move crushing and injuring his chest, back, and left shoulders Elfe Dep., p. 45-53.  Plaintiff also injured his hand when he attempted to extricate himself from the cell doors. Id., pp.45-53.

When Plaintiff was finally able to extricate himself from his cell door, Plaintiff stumbled out of his cell onto the gallery, and began to spit up saliva. Elfe Dep., p. 54.  Plaintiff then began to yell for help yelling that the cell door slammed on him and he needed a doctor.  Elfe Dep., p. 55. Defendant Officer yelled up to ask him whether he was really hurt or just playing games. Elfe Dep., p. 59.  Plaintiff responded that he was not playing games, that he was not a child and that he really was hurt and he really needed a doctor.  Elfe Dep., p. 59.  Defendant Officer responded, "are you playing games, why are you playing games, you're not hurt."  Elfe Dep., p. 60.  Plaintiff testified that he knows for a fact that Defendant officers knew that the he was hit by the door, because immediately before the door hit him, Plaintiff saw Defendant Correction officers looking at him. Elfe Dep., p. 60.  The correction officer never assisted Plaintiff.

2

Plaintiff's cell door opened and Plaintiff went back into his cell. Elfe Dep., p. 70. After Plaintiff

went back into his cell, the light skinned correction officer who was sitting in the bubble made a

tour of the cells, checking on the inmates within the cells.  When she passed by Plaintiff's cell,

Plaintiff told her that he needed a doctor, that he needed medical attention.  The correction

officer looked at Plaintiff's chest and back, and told Plaintiff that his chest was red.  Elfe Dep., p.

77.  Plaintiff assumed that she would take the problem seriously by calling a doctor or sending

Plaintiff to the clinic, but she offered Plaintiff no assistance.  Elfe Dep., p. 78.

       Around 7 A.M. the correction officers changed their shifts.  Elfe Dep., p. 79.  Two

additional correction officers Mrs. B and Mrs. Allan replaced the two correction officers that

were in the bubble at the time Plaintiff suffered his injuries.  Elfe Dep., p. 82.  When Mrs. B

toured the cell area, Plaintiff told Mrs. B what happened to him on the previous shift.  Elfe Dep.,

p. 82-83.  He told Mrs. B how he was injured, how he requested medical attention, and how he

was treated by the tall dark-skinned correction officer.  Elfe Dep., p. 86.  Plaintiff was then told

to wait for the captain.   Mrs. Allan then asked Plaintiff to come down to the bubble where she

spoke with Plaintiff about the incident, after which Mrs. B filled out an incident report on behalf

of Plaintiff. Elfe Dep., p.  89-90.  When the Captain finally arrived, he spoke with Plaintiff, and

physically checked Plaintiff, and told Plaintiff to write a brief summary of what happened to him.

After physically checking Plaintiff and reading Plaintiff's report the captain told Plaintiff that

he'll get Plaintiff medical assistance where he then escorted Plaintiff to the infirmary.  Elfe Dep.,

p. 91-95.

       At the infirmary, Plaintiff was told that he had swelling and bruises, and Plaintiff was

prescribed pain relief medication.  Elfe Dep., p. 96-97.   Plaintiff went back to the infirmary

about 3-4 times a week afterwards for further medical checkup in order to get an update on his

condition and in order continue receiving medication.  Elfe Dep., p. 106.  See Excerpts from

Plaintiff's Corrrectional Health Services Records (Medical Records) annexed to "Ofodile Aff. as

Exh 4, Bates-Stamp Nos. 28-29, 32-47, 53-57.  Plaintiff received medications for this specific

injury throughout his stay in prison and until he was discharged from prison.  See Elfe Dep., p.

106,  Medical Records annexed to "Ofodile Aff. as Exh 4, Bates-Stamp Nos. 11, 14.  During his

weekly visits, Plaintiff was told by a neurologist that he must go to Bellevue hospital.  Elfe Dep.,

p. 106.  Plaintiff was then sent to Bellevue hospital where a series of tests were performed on

Plaintiff.  Plaintiff was told that he had nerve damage in his right hand and bursitis an

inflammation of the back and shoulder as a result of the incident.  See Elfe Dep., p. 107, Medical

Records annexed to "Ofodile Aff. As Exh 4, Bates-Stamp Nos. 281, 290.  The Doctor then

recommended surgery to Plaintiff for his pinched nerve, and explained to Plaintiff that at his age

if his injury did not heal within a year the nerves which usually repaired themselves would not

repair themselves.  Elfe Dep., p. 121.

Plaintiff continues until this day to feel a sharp shooting pain in his back as a result of his

injuries, which makes it a little painful for Plaintiff to have sex.  Elfe Dep., p. 109-110, Medical

Records annexed to "Ofodile Aff. as Exh 4, Bates-Stamp Nos. 9,12.  Plaintiff's left shoulder also

continues to hurt.  Id.  Plaintiff also sought and received psychological assistance once a month

for over a year and half as a result of the injuries he suffered.  Elfe Dep., p. 111.

Plaintiff did attempt to grieve this issue.  Elfe Dep., p. 114.  When Plaintiff attempted to

grieve the issue with the Department of Corrections he was told that his matter "was not

grievable".  Elfe Dep., p. 114.  He was told that some matters were grievable issues, but that that

the grievance committee always closes their door on inmates who experience incidents such as his. Elfe Dep., p. 115.   Plaintiff testified in his deposition, that in the correctional facility, a man usually comes around weekly and asks inmates if they have any issues.   When the man came to Plaintiff's cell after he was injured, Plaintiff told the man that he wanted to grieve an incident where he was injured, that he is seeing a doctor for his injuries and grieve the fact that he was moved as a result.   The man told Plaintiff to go to the law library, and the people at the law library directed Plaintiff to file a complaint with the court, a notice of claim, and send his complaint to the IG's office.   Elfe Dep., p. 119-120.

Plaintiff's position with regard to his attempt to file the grievance is supported by the Inmate Grievance Resolution Program's Directive, issued by the City of New York Department of Correction Dated 03/13/08.   See Inmate Grievance Resolution Program, Directive annexed to Ofodile Aff. as Exh 6, p. 2.   Plaintiff's position is also supported by Plaintiff's responses in Plaintiff's pro-se complaint in Section IV titled Exhaustion of Remedies.   See Complaint of Glenn Corey Elfe annexed to "Ofodile Aff. as Exh.5.

## STANDARD FOR SUMMARY JUDGMENT

In order for the Court to grant Defendant's Motion for Summary Judgment, "not only must there be no genuine issue as to the evidentiary facts, but there must also be no controversy regarding the inferences to be drawn from them." *Donahue v. Windsor Board of Fire Commissioners*, 834 F.2d 54, 57 (2nd Cir. 1987) (quoted in *Harris v. Provident Life & Accident Insurance Company,* 310 F.3d 73, 78 (2nd Cir. 2002)).

Summary judgment is appropriate when the record, viewed in light most favorable to the non-moving party, reveals that there is no genuine issue of material fact and that the moving

party is entitled to judgment as a matter of law – Rule 56 (c) of Federal Rules of Civil Procedure. "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [her] favor." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255 (1986).

On a motion for summary judgment, what this Court cannot do is weigh the evidence or try issues of fact. *See  Gallo v. Prudential Residential Services Ltd. Partnership,* 22 F.3d 1219, 1223 (2nd Cir. 1994).  Weighing the evidence is for the trier of fact.  Even on the claims that the Court believes the Plaintiff may lose at trial, at the summary judgment level, if there are disputed issues of fact, the Court cannot grant summary judgment on those claims.  *See* Anderson, 477 U.S. at 242 (1986).  The Court's only duty at the summary judgment level is to determine whether there are issues of fact to be tried.  *See Cronin v. Aetna Life Ins., Co*., 46 F.3d 196 (2d Cir. 1995).

## **ARGUMENT**

## **POINT I: Defendant's In Closing the Door On Plaintiff Used Excessive Force**

In closing the cell door on Plaintiff, Defendant's were not merely negligent, defendants acted with reckless disregard for Plaintiff's safety and used excessive force in doing so. The Eighth Amendment, which applies to the states through the due process clause of the Fourteenth Amendment, prohibits the infliction of "cruel and unusual punishment" including the "unnecessary and wanton infliction of pain." See *Rhodes v. Chapman*, 452 U.S. 337, 344-45, 69 L. Ed. 2d 59, 101 S. Ct. 2392 (1981); *Gregg v. Georgia*, 428 U.S. 153, 173,  [*398]  49 L. Ed. 2d 859, 96 S. Ct. 2909 (1976). An Eighth Amendment claim of cruel and unusual punishment consists of two components: (1) a subjective component which focuses on the defendant's motive for his conduct; and (2) an objective component which focuses on the conduct's effect. See *Sims*

*v. Artuz,* 230 F.3d 14, 20 (2d Cir. 2000).

The subjective component "requires [**42] a showing that the defendant 'had the necessary level of culpability, shown by actions characterized by 'wantonness'' in light of the particular circumstances surrounding the challenged conduct." Id. at 21 (quoting *Blyden v. Mancusi*, 186 F.3d 252, 262 (2d Cir. 1999) (quoting *Wilson v. Seiter*, 501 U.S. 294, 299, 115 L. Ed. 2d 271, 111 S. Ct. 2321 (1991))). In excessive force cases, "wanton" conduct involves force that is applied "maliciously and sadistically to cause harm" as opposed to force that is "applied in a good-faith effort to maintain or restore discipline." *Hudson v. McMillian*, 503 U.S. 1, 7, 117 L. Ed. 2d 156, 112 S. Ct. 995 (1992); see also *Blyden*, 186 F.3d at 262-63. "To determine whether defendants acted maliciously or wantonly, a court must examine several factors including: the extent of the injury and the mental state of the defendant, as well as 'the need for the application of force; the correlation between that need and the amount of force used; the threat reasonably perceived by the defendants; and any efforts made by the defendants to temper the severity of a forceful response.'" *Scott v. Coughlin*, 344 F.3d 282, 291 (2d Cir. 2003) [**43] (quoting *Romano v. Howarth*, 998 F.2d 101, 105 (2d Cir. 1993) (citations omitted)).

The objective component of an Eighth Amendment violation claim requires that the violation be "'sufficiently serious' by objective standards." *Griffin v. Crippen*, 193 F.3d 89, 91 (2d Cir. 1999). "The objective component . . . is . . . contextual and responsive to 'contemporary standards of decency.' . . . When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated." Hudson, 503 U.S. at 8-9. A showing of extreme injury is not required to bring an excessive force claim against prison officials; however, "'de minimis uses of physical force, provided that the use of force is not of a

sort repugnant to the conscience of mankind'" are not actionable as a violation of the Eighth

Amendment. Sims, 230 F.3d at 21-22 (quoting *Hudson*, 503 U.S. at 10).

Plaintiff has demonstrated enough facts to support both the objective and subjective

component of an excessive force claim under the Eighth Amendment.

With respect to the objective standard, Plaintiff has suffered severe sharp shooting pains

in his back and left shoulders as a result of Defendant Correction Officers closing the cell doors

on him.  This injury is not de minimis as a matter of law.  See, e.g., *Evering v. Rielly*, 2001 U.S.

Dist. LEXIS 15549, No. 98 Civ. 6718, 2001 WL 1150318, at *6 (S.D.N.Y. Sept. 28, 2001)

(finding that injuries such as bruises, knot in back, soreness and redness in vaginal area and knife

wound on right arm were not de minimis as a matter of law); Griffin, 193 F.3d at 92 (finding a

bruised shin and swelling over left knee were not de minimis as a matter of law).  Thus, whether

Plaintiff's injuries were sufficiently serious as to satisfy the objective element of [his] excessive

force claims is for the jury to decide. *Evering*, 2001 U.S. Dist. LEXIS 15549, 2001 WL 1150318,

at *6.

With respect to the subjective element, Plaintiff in his deposition testified that one of the

Defendant correction officers were looking directly at him immediately before the cell door

closed in on him, which directly suggests that Defendant Correction Officers acted intentionally

or recklessly in closing the cell door on Plaintiff, which demonstrates Defendants wanton state of

mind.  Plaintiff was yelling at the Defendant Correction Officers immediately before the cell door

closed and crushed him.  Defendant Correction Officers repeatedly yelled back at Plaintiff to

"Wait" before, without any warning and probably to teach Plaintiff a lesson, Defendant

Correction Officers closed the cell door on Plaintiff.  Hence Plaintiff has demonstrated a genuine

issue f fact concerning the amount of force used by the Correction Officers and the intent with which it was applied, e.g. whether the Correction Officers use of force in closing the cell door on Plaintiff was reckless or malicious.

## POINT II: Defendant's Denied Plaintiff Medical Care

Defendants violated the eighth amendment prohibition against cruel and unusual punishment by failing to attend to inmates medical needs.  A prisoner advancing an Eighth Amendment claim for denial of medical care must allege deliberate indifference to a serious medical need. *Wilson v. Seiter*, 501 U.S. 294, 297, 111 S. Ct. 2321, 115 L. Ed. 2d 271 (1991); *Hathaway v. Coughlin,* 37 F.3d 63, 66 (2d Cir. 1994). More than negligence is required but less than "conduct undertaken for the purpose of causing harm." *Hathaway*, 37 F.3d at 66. The test for a § 1983 claim is twofold. First, the prisoner must show that there is a sufficiently serious medical need. *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998); *Hathaway*, 37 F.3d at 66. Second, the prisoner must demonstrate that the prison official showed deliberate indifference by having knowledge of the risk and failing to take measures to avoid the harm. Id. *Abbas v. Senkowski*, 2005 U.S. Dist. LEXIS 32398, 20-21 (N.D.N.Y Sept. 9, 2005)

### A. Plaintiff has demonstrated a sufficiently serious medical condition.

A sufficiently serious medical condition is a "condition of urgency, one that may produce death, degeneration or extreme pain."' Id. (quoting *Nance v. Kelly*, 912 F.2d 605, 607 (2d Cir. 1990) (Pratt, J., dissenting)). However, it is well-established in the Second Circuit that "denial of an inmate's serious medical needs includes not only deprivations of medical care that produce torture and lingering death, but serious denials which cause or perpetuate pain." *Brady v. Griffith,* 1998 U.S. Dist. LEXIS 18442, No. 95 Civ. 2364 (JFK), 1998 WL 814630, at *3 (S.D.N.Y. Nov.

9

23, 1998) (citing *Todaro v. Ward*, 565 F.2d 48, 52 (2d Cir. 1977)). Similarly, a serious medical

condition exists where "the failure to treat a prisoner's condition could result in further significant

injury or the unnecessary and wanton infliction of pain." *Chance v. Armstrong*, 143 F.3d 698,

701-02 (2d Cir. 1998) (internal quotations omitted). Ailments that have been deemed sufficiently

serious include the degeneration of teeth where the inmate was in great pain for six months, see

id., 143 F.3d at 701; the denial of prescription eyeglasses which caused headaches, deterioration

of vision and impairment in daily activities, *Koehl v. Dalsheim*, 85 F.3d 86, 88 (2d Cir. 1996); a

two-year delay in removing broken pins from a hip and nearly seventy complaints of hip pain, see

Hathaway, 37 F.3d at 66; the loss of an ear, see *Williams v. Vincent*, 508 F.2d 541 (2d Cir. 1974);

and diabetes requiring a special diet, see *Johnson v. Harris*, 479 F. Supp. 333 (S.D.N.Y. 1979).

See also *Dean v. Coughlin*, 623 F. Supp. 392, 404 (S.D.N.Y. 1985) (holding that "dental needs --

for fillings, crowns, and the like -- are serious medical needs as the law defines that term").

*Williams v. M.C.C. Inst.*, 1999 U.S. Dist. LEXIS 3871 (S.D.N.Y. Mar. 25, 1999).

Plaintiff's injuries do constitute a sufficiently serious medical condition.

When assessing the relevant factors in determining the seriousness of Plaintiff's injuries,

one must conclude that Plaintiff's injuries were serious.  Factors relevant to the seriousness of a

medical condition include whether "a reasonable doctor or patient would find [it] important and

worthy of comment," whether the condition "significantly affects an individual's daily activities,"

and whether it causes "chronic and substantial pain." Chance v. Armstrong, 143 F.3d 698, 702

(2d Cir. 1998) (quotation marks omitted).

In Plaintiff's case, 1) a reasonable doctor did in fact find Plaintiff's injuries important and

worthy of comment.  At Bellevue hospital a reasonable doctor found worthy of comment that

10

Plaintiff had nerve damage as a well as bursitis, an inflammation of the of the back and chest as a result of Plaintiff's injuries.  The Doctor also suggested that Plaintiff get surgery for his nerve damage given Plaintiff's age and the less likelihood of his nerves healing itself.  2) Plaintiff's injuries has significantly affected his daily activities.  Plaintiff until this day still feels excruciating pain in his back and shoulders.  Plaintiff must take medication to lessen the pain just so he could attend to his daily activity.  And Plaintiff experiences pain while having sex, and he enjoys the activity much less as a result.   3) Plaintiff's injuries do in fact cause substantial and chronic pain.  Plaintiff still feels pain in his back and shoulder until this day as a result of his injuries.

### B.  Defendant Officials acted with a culpable state of mind.

The second requirement for an Eighth Amendment violation is subjective: the charged official must act with a sufficiently culpable state of mind. *Wilson*, 501 U.S. at 300 (reasoning that "some mental element must be attributed to the inflicting officer" before the harm inflicted can qualify as "punishment").  Deliberate indifference is a mental state equivalent to subjective recklessness, as the term is used in criminal law. *Farmer*, 511 U.S. at 839-40. This mental state requires that the charged official act or fail to act while actually aware of a substantial risk that serious inmate harm will result. Id. at 836-37. Although less blameworthy than harmful action taken intentionally and knowingly, action taken with reckless indifference is no less actionable. The reckless official need not desire to cause such harm or be aware that such harm will surely or almost certainly result. Rather, proof of awareness of a substantial risk of the harm suffices. Id. at 835, 842.   The deliberate indifference standard does not require a showing "that a prison official acted or failed to act believing that harm actually would befall an inmate; it is enough that the

official acted or failed to act despite his knowledge of a substantial risk of serious harm."
*Farmer*, 511 U.S. 825, 842, 128 L. Ed. 2d 811, 114 S. Ct. 1970 (1994).

Defendant's correction officers actions demonstrate a deliberate indifference to Plaintiff's medical needs. Defendant correction Officer was aware of the fact that Plaintiff was injured, because Defendant correction Officers saw the cell door hit Plaintiff, and they saw Plaintiff spitting up and falling to the floor. Defendant correction Officers knew that they were responsible for getting Plaintiff much needed medical assistance. But rather than assisting Plaintiff, Defendant Police officer mocked and ignored Plaintiff's request for medical assistance. When Plaintiff was injured by the cell door he yelled that he needed a doctor and that the cell door slammed on him. Elfe Dep., p. 55. Defendant correction Officer whom Plaintiff described as, tall and dark-skinned, asked Plaintiff whether he was he playing, whether he playing some sort of game. Plaintiff told the Officer that the door slammed on him, he needed a doctor and he was hurt. Plaintiff responded that this was not a game, that he was not a child, that he was hurt and he needed a doctor. Defendant Officer repeated "are you playing games, why are you playing games, you're not hurt. Elfe Dep., p. 60. Defendant Police officers knew for a fact that the cell door hit Plaintiff. When Plaintiff was asking for the cell door to be closed, Defendant Police officer were watching him. Plaintiff saw them looking at him. They saw the door hit Plaintiff. Elfe Dep., p. 60. But rather than assisting Plaintiff, the tall dark-skinned Correction officer walked away. When the light skinned Correction officer came by Plaintiff cell, Plaintiff told her that he was injured by the cell door. She then checked on Plaintiff and noted that he had redness in his chest. But she also did absolutely nothing in the way of helping Plaintiff. She did not write out an incident report, call the captain, or escort Plaintiff to the infirmary.

12

Therefore, Defendant Correction Officers were aware of the fact that Plaintiff was seriously injured, and despite their awareness of Plaintiff's serious injuries, they did not offer Plaintiff any assistance with his medical needs.

## Point III: Plaintiff Exhausted His Remedies As Required By The PLRA

The Second Circuit has held that a three-part inquiry is appropriate in cases where a prisoner plaintiff plausibly seeks to counter defendants' contention that the prisoner has failed to exhaust available administrative remedies as required by the PLRA, 42 U.S.C. § 1997e(a). Depending on the inmate's explanation for the alleged failure to exhaust, the court must ask whether administrative remedies were in fact "available" to the prisoner. *Abney v. McGinnis*, 2004 U.S. App. LEXIS 17238 (2d. Cir. Aug. 18, 2004). The court should also inquire as to whether the defendants may have forfeited the affirmative defense of non-exhaustion by failing to raise or preserve it, *Johnson v. Testman*, 2004 U.S. App. LEXIS 17236 (2d. Cir. Aug. 18, 2004), or whether the defendants' own actions inhibiting the inmate's exhaustion of remedies may estop one or more of the defendants from raising the plaintiff's failure to exhaust as a defense, *Ziemba*, 366 F.3d at 163. If the court finds that administrative remedies were available to the plaintiff, and that the defendants are not estopped and have not forfeited their non-exhaustion defense, but that the plaintiff nevertheless did not exhaust available remedies, the court should consider whether "special circumstances" have been plausibly alleged that justify "the prisoner's failure to comply with administrative procedural requirements." *Giano v. Goord*, 2004 U.S. App. LEXIS 17235 (2d. Cir. Aug. 18, 2004)(citing *Berry v. Kerik*, 366 F.3d 85, 88 (2d Cir. 2003); Rodriguez order).

A court may not dismiss for failure to exhaust administrative remedies unless . . . [it]

13

determines that such remedies are available." Snider, 199 F.3d at 114; accord *Mojias v. Johnson*, 351 F.3d 606, 609-10 (2d Cir. 2003). When determining whether an administrative remedy is available, courts "should be careful to look at the applicable set of grievance procedures, whether city, state or federal." *Mojias*, 351 F.3d at 610.  *Abney v. McGinnis*, 2004 U.S. App. LEXIS 17238 (2d. Cir. Aug. 18, 2004).

Contrary to Defendants argument, Plaintiff did attempt to grieve this issue.  Elfe Dep., p. 114.  When Plaintiff attempted to grieve the issue with the Department of Corrections he was told that his matter "was not grievable".  He was told that some matters were grievable issues, but that the grievance committee always closes their door on inmates who experience incidents such as his.  Elfe Dep., p. 115.   Plaintiff testified in his deposition, that in the correctional facility, a man usually comes around weekly and asks inmates if they have any issues.   When the man came to Plaintiff's cell after he was injured, Plaintiff told the man that he wanted to grieve an incident where he was injured, that he is seeing a doctor for his injuries and grieve the fact that he was moved as a result.  The man told Plaintiff to go to the law library, and the people at the law library directed Plaintiff to file a complaint with the court, a notice of claim, and send his complaint to the IG's office.

Plaintiff's position is buttressed by the fact that "The Inmate Grievance Resolution Program's Directive, issued by the City of New York Department of Correction, specifically states in part III. Section C. under the heading NON-GRIEVABLE  ISSUES;

1.  The decisions or dispositions that are considered non-greivable within the IGRP, include, but are not limited to: disciplinary proceedings, discrimination

14

based on disability or perceived disability, Centrally Monitored Case (CMC)

Status, Red identification (ID) or Enhanced Restraint Status, Classification

designations, such as close custody Housing (CCH), Use of Force, freedom of

Information Law (FOIL) requests, and matters under investigation by the

investigation Division (ID) and NYC Department of Investigation (DOI) /

Inspector General (IG) and the NYC Department of jurisdiction of the DOC are

non-grievable.  Grievances that request actions that are not obtainable via the

IGRP, will result in dismissal at the IGRC level.  In such cases, the grievant shall

be directed to the appropriate mechanism whereby he/she can seek the resolution

requested.

In addition, in Plaintiff's pro-se complaint in Section IV titled Exhaustion of Remedies,

Plaintiff checked no to the question "Does the grievance procedure at the jail, prison or other

correctional facility where you claim's arose cover some or all of your claims?, and he checked

yes to the question "Does the grievance procedure at the jail, prison or other correctional facility

where your claims arose not cover some of your claims.  See Complaint of Glenn Corey Elfe

annexed to "Ofodile Aff. as Exh.5.  Plaintiff further responded that the grievance procedure at his

correctional facility did not cover injuries and denial or delayed medical care.

## Point IV: Defendants Are Not Entitled To Qualified Immunity

The doctrine of qualified immunity seeks to balance the twin facts that civil actions for

damages may "offer the only realistic avenue for vindication of constitutional guarantees," and

that such suits nevertheless "can entail substantial social costs ...*Anderson v. Creighton*, 483 U.S.

635, 638, 107 S. Ct. 3034, 97 L. Ed. 2d 523 (1987) (internal citation omitted)

15

The Supreme Court has established a two-part inquiry to determine when qualified immunity is applicable (1) the court must first consider whether the facts alleged, when taken in the light most favorable to the party asserting the injury, demonstrate a violation of a constitutional right, *Saucier v. Katz*, 533 U.S. 194, 201, 121 S. Ct. 2151, 150 L. Ed. 2d 272 (2001); and (2) the court must then consider whether the officials' actions violated "clearly established statutory or constitutional rights of which a reasonable person would have known," *Hope v. Pelzer*, 536 U.S. 730, 739, 122 S. Ct. 2508, 153 L. Ed. 2d 666 (2002).  The court must determine whether "[t]he contours of the right [allegedly violated are] sufficiently clear that a reasonable official would understand that what he [or she] is doing violates that right." *Anderson*, 483 U.S. at 640;  *Luna v. Pico*, 356 F.3d 481, 490 (2d Cir. 2004).  Finally, the Court must keep in mind that the right at issue in a qualified immunity case need not be limited to the specific factual situation in which that right was articulated. Indeed, "the Supreme Court has declined to say that 'an official action is protected by qualified immunity unless the very action in question has previously been held unlawful,' and has, instead, chosen a standard that excludes such immunity if 'in the light of pre-existing law the unlawfulness [is] apparent.'" *Papineau v. Parmley*, 465 F.3d 46, 55-56 (2d Cir. 2006) quoting *Back v. Hastings on Hudson Union Free Sch. Dist.*, 365 F.3d 107, 129 (2d Cir. 2004) (quoting *Hope*, 536 U.S. at 739).

As for the 1st part of the qualified immunity inquiry the fact that defendant's denied or unreasonably delayed medical care to Plaintiff in violation of the Eighth Amendment to the United States Constitution, when taken in the light most favorable to Plaintiff, establishes a violation of a constitutional right.

As for the second part of the qualified immunity inquiry Defendants action did in fact

16

violate clearly established constitutional rights.

A reasonable official with a duty to reasonably provide inmates with medical care, when seeing an inmate on the floor yelling and begging for assistance after being crushed by a cell door would understand that mocking the inmate by telling him that he was not serious or seriously hurt without checking to see if the inmate was hurt, violated that inmates right to receive medical care.

## Point V:  Defendant's Have Not Established That State Law Claims Must Be Dismissed.

Plaintiff has demonstrated viable federal claims as discussed in Points I through VI above.  If the court finds that Plaintiff has not demonstrated viable federal claims, then it is well within the Court's discretion whether to proceed in Federal Court with the state law claims since it has acquired supplemental jurisdiction over these claims and has already spent so much time and effort.  See *Nowak v. Ironworkers Local 6 Pension Fund,* 81 F.3d 1182 (2d Cir. 1996); *Parker v. Rocco*, 252 F.3d 663 (2d Cir. 2001); *Correspondent Servs. Corp., v. First Equities Corp.*, 338 F.3d 119 (2d Cir. 2003).

## Point VI: New York Correction Law §24 Does Not Apply To City Employees

The two cases that Defendants cite, *Ierardi v. Sisco*, 119 F.3d 183, 186 (2d Cir. 1997) and *Baker v. Coughlin*, 77 F.3d 12, 15 (2d Cir. 1996), do not stand for the proposition that city correctional employees as opposed to state correctional employees receive immunity from being sued in their individual capacities under New York Correction Law § 24.  The Correction Officers in both cases cited above were employees of New York state, not employees of New York City.  Therefore, in both cases, it was possible to sue the state in the Court of Claims.

17

Here, Plaintiff is suing the City of New York, and it's individual Correction Officers, Bowers,

Johnson, and Allen.  It's Correction Officers are employees of the City of New York, not the

state of New York.  Therefore, New York Correction Law § 24 does not protect the Individual

Defendants in this suit and the Court should not dismiss any federal or state law claims against

the individual defendants.

## **CONCLUSION**

Based on the forgoing, Plaintiff request that the Court denies defendant's Motion in its

entirety.

Dated: Brooklyn, New York
      September 30, 2008

                    Respectfully Submitted:

                                  OFODILE & ASSOCIATES, P.C.
                                  *Attorneys for Plaintiff Glenn Corey Elfe*

                   By:   /s/ /b/ Anthony C. Ofodile
                                  Anthony C. Ofodile, Esq. (AO-8295)
                                  498 Atlantic Avenue
                                  Brooklyn, New York 11217
                                  (718) 852-8300

      To:    Douglas Heim, Esq. (By ECF)
      Assistant Corporation Counsel of the
      City of New York
      Attorney for Defendants
      100 Church Street
      New York, New York 10007

CC:     Honorable Barbara S. Jones (By Hand)
        United States District Judge
        Southern District of New York
        Daniel Patrick Moynihan United States Courthouse
        500 Pear Street
        New York, New York 10007