UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------x
                              :

GLENN COREY ELFE,              :

              Plaintiff,    :

                              :      06 Cv. 4388 (BSJ)

           v.               :

                              :

THE CITY OF NEW YORK, 1 Centre Street,  :
New York 10007; DEPARTMENT OF        :
CORRECTIONS FOR N.Y.C., 60 Hudson St.,  :
New York, NY 10013; CORRECTIONAL      :
OFFICER MS. JOHNSON, worked 11pm-1am    :
Shift on 17.A at G.R.V.C. on 12/29/2005;:
CORRECTIONAL OFFICER MS. BOWERS, worked :
11pm-7am shift on 17.A at G.R.V.C. on   :
12/29/2005; MS.ALLEN, worked 7am-3pm    :
shift on 17.A at G.R.V.C. on 12/29/2005 :
Regular A/B side-A Officer,           :

                              :      **Order**

                              :

             Defendants.   :
----------------------------------------x
BARBARA S. JONES
UNITED STATES DISTRICT JUDGE

     Plaintiff Glenn Corey Elfe ("Plaintiff") brought this

action under 42 U.S.C. § 1983, asserting claims for excessive

use of force and deliberate indifference to medical needs.

Pursuant to Rule 56 of the Federal Rules of Civil Procedure,

defendants the City of New York ("City"), Department of

Corrections for New York City ("DOC"), Correctional Officer

Johnston ("Officer Johnston"), Correctional Officer Bowers

("Officer Bowers"), and Regular A/B side-A Officer Allen

("Officer Allen") (collectively, "Defendants") move for summary

1

judgment.   For the reasons that follow, Defendants' motion is
GRANTED.

## FACTS[1]

This action arises out of an incident that occurred on the
morning of December 29, 2005, at approximately 5:40 a.m. at the
George R. Vierno Center ("G.R.V.C.") on Rikers Island.
(Defendants' Statement Pursuant to Local Rule 56.1[2] ("Defs.' R.
56.1 Stmt.) ¶ 9; Complaint ("Compl.") 2.)   On that date,
Plaintiff was sleeping in his cell when his door was opened.[3]
(Defs.' R. 56.1 Stmt., ¶ 10.)   Plaintiff was concerned for his
safety, as an open cell door can leave an inmate vulnerable to
attack. (Deposition of Glenn Corey Elfe ("Pl.'s Dep.") at 39.)
He went to the cell door and asked that it be closed by calling
down to two female officers, Officers Johnston and Bowers, who
were in a station known as "the bubble" two stories below.
(Defs.' R. 56.1 Stmt., ¶¶ 11-12; Compl. II.D.)   At the same
time, at least two other inmates were similarly yelling for
their cell doors to be closed.   (Defs.' R. 56.1 Stmt., ¶ 13.)
From the bubble, Officers Johnston and Bowers responded, "wait,
wait" and Plaintiff waited approximately five minutes, standing
in the doorway of his cell with one leg and part of his body

---

[1] Unless otherwise indicated, these facts are undisputed.
[2] The Court only cites Defs.' R. 56.1 Stmt for facts that are supported by the
evidence to which they cite.
[3] It appears that Plaintiff was a pre-trial detainee at the time of the
incident at issue. (See Defs.' Memorandum of Law in Support of Their Motion
for Summary Judgment ("Defs.' Mem.") at 6 n.1.)

outside the door, waving his right arm so that the officers
would see him.  (Id. ¶¶ 14-15.)  Plaintiff heard other cell
doors close, and repeated his requests as he stood in his
doorway. (Id. ¶¶ 16-17; Pl.'s Dep., at 42.)  The officers kept
telling him to wait. (Defs.' R. 56.1 Stmt., ¶ 16.)

Plaintiff's cell door closed while he stood in the doorway,
"crush[ing]" his chest, back, and left shoulder. (Id. ¶¶ 18,
20.)  Plaintiff then used his right hand to pry open the door so
he could slip out and onto the tier, hurting his right hand in
the process. (Id. ¶¶ 21-22.)  After he freed himself from the
door, he stumbled onto the gallery, slumping over the railing
and spitting up saliva.  (Id. ¶ 23.)  He then yelled that the
door had slammed on him and he needed a doctor; at this point he
could see Officer Bowers sitting in the bubble and another
entering the housing unit.  (Id. ¶ 24; Plaintiff's Response to
Defendant's Rule 56.1 Statement of Undisputed Material Facts
("Pl.'s R. 56.1 Stmt.") ¶ 24.)

From the bubble, Plaintiff alleges, Officer Bowers asked
him if he was "playing games."  (Defs.' R. 56.1 Stmt., ¶ 26;
Compl. II.D.)  Plaintiff responded that he was not and that he
needed a doctor. (Defs.' R. 56.1 Stmt., ¶ 27.)  He could not
hear what Officer Bowers's exact response was, but believes she
said something to the effect that he was not hurt and was just
playing games.  (Id. ¶ 28.)  In a five-page attachment to

3

Plaintiff's Complaint, Plaintiff alleges that he next asked the
officers to open the cell door, but Officer Bowers responded
that his threats did not scare her. (Id. ¶ 29; Attachment to
Pl.'s Compl., at 2.)[4]

Plaintiff returned to his cell and observed redness in the
middle of his chest, bruising and redness on his hands, but no
blood anywhere; he also felt sharp and shooting pain in his
chest. (Defs.' R. 56.1 Stmt., ¶ 31; Pl.'s R. 56.1 Stmt., ¶ 31.)
The redness on his hands lasted approximately one hour. (Defs.'
R. 56.1 Stmt., ¶ 32.)  Shortly after Plaintiff's return to his
cell, Officer Johnston, while touring the cells, stopped at
Plaintiff's cell when he said he needed a doctor. (Id. ¶ 33.)
He showed her his chest and back; she said that his chest was
red but his back was not, and left. (Id. ¶ 34.)

There was a shift change at approximately 7:00 a.m., at
which point Officer Allen and "Ms. B" – another correctional
officer not named in this action – made rounds through the
cells.  In the course of those rounds, Plaintiff did not speak
to Officer Allen, but he spoke to Ms. B. (Id. ¶¶ 35-36.)  He
told Ms. B what had happened on the prior shift and that he had
requested medical attention.  (Id. ¶ 37.)

---

[4] Plaintiff testified in a deposition, however, that he had not asked for his
door to open and did not know why it opened again; he assumed he was being
told to go inside.  (Defs.' R. 56.1 Stmt., ¶ 30; Pl.'s R. 56.1 Stmt., ¶ 30;
Pl's Dep., at 70-71.)

Approximately five minutes after talking with Ms. B, Plaintiff's cell opened and he was instructed to go see Officer Allen in the bubble. (Id. ¶ 38.)  Officer Allen asked him what was going on and Plaintiff told her that he had been hurt and needed to see a doctor. (Id. ¶ 39.)  He then helped Ms. B fill out a report on the incident and waited for a captain to arrive. (Pl.'s Dep., at 90.)  When the captain on duty, Captain Fadina, arrived, he looked at Plaintiff's back, chest, shoulder and hand and asked Plaintiff to write down what happened. (Defs.' R. 56.1 Stmt., ¶ 41.)

In deposition testimony, Officer Allen recalled that Plaintiff asked to go to the clinic at approximately 9:30 a.m. because he had been hurt by his cell door at approximately 6:00 a.m. (Defs.' R. 56.1 Stmt., ¶¶ 54-55.)  After Plaintiff requested medical attention she called Captain Fadina to inform him of Plaintiff's request and take Plaintiff to the clinic. (Id. ¶¶ 55-56.)  After writing out the report on the incident, Plaintiff walked with Captain Fadina to the infirmary on the other side of the jail. (Id. ¶ 43; Pl.'s R. 56.1 Stmt., ¶ 43.)  Plaintiff arrived at the infirmary between 10:00 a.m. and 11:00 a.m. (Defs.' R. 56.1 Stmt., ¶ 44.)  He testified that the doctor who examined him told him he had some swelling, "a little bruise," and was "red." (Id. ¶ 45; Pl.'s Dep., at 96-97.)  The

doctor prescribed some medication, but Plaintiff did not remember what it was. (Defs.' R. 56.1 Stmt., ¶ 46.)

An Injury to Inmate report dated December 29, 2005, 10:50 a.m. indicates that Plaintiff was found negative for swelling, functional limitations, neurological loss, and motor loss, and that he was prescribed Motrin and analgesic balm.  (Id. ¶ 50.) Plaintiff's Prison Health Services Records also indicate that he was evaluated at approximately 10:00 a.m. on December 29, 2005 and prescribed Motrin and analgesic balm.  (Id. ¶ 51.)

Plaintiff continued to receive medical treatment on Rikers Island, including medication, consultation with a neurologist, and x-rays.[5]  Plaintiff's Prison Health Services Records indicate that x-rays of his spine, sternum, and left shoulder were normal and indicated the absence of any fracture.  (Id. ¶ 52; Declaration of Douglas Heim ("Heim Decl."), Ex. "F," at 10, 306-307.) (Id. ¶ 47.)  After the incident, Plaintiff testified, he received medication every few days for approximately one year, then sporadically for at least another year.  (Pl.'s Dep., at 106.)  According to Plaintiff, at some point, he was diagnosed with a pinched nerve and bursitis.  (Defs.' R. 56.1 Stmt., ¶ 48.)

Officer Johnston signed a statement that she had not witnessed the incident. (Defs.' R. 56.1 Stmt., ¶ 53.)  Officer

---

[5] The record does not indicate when Plaintiff left Rikers.

Bowers signed a statement that at no point did Plaintiff "notify the writer that he was injured by the gate." (Heim Decl. Ex. "E," at 4.) She also testified that she has no memory of such an incident (Heim Decl. Ex "G," at 48.), and that she never purposely ignored an inmate's request for medical treatment. (Heim Decl. Ex. "G," at 91.) Officer Johnston likewise denied having any memory of such an incident. (Heim Decl. Ex "H," at 50, 51, 66.)

When Plaintiff attempted to grieve the incident with DOC, he was told the matter was "not grievable" and instructed to file a complaint with the Inspector General. (Pl.'s R. 56.1 Stmt., ¶ 49; Pl.'s Dep., at 114-115, 119-120.) Specifically, an unidentified male prison official instructed Plaintiff to go to the law library (Pl.'s R. 56.1 Stmt., ¶ 49; Pl.'s Dep., at 114), where staff directed Plaintiff to file a complaint with the Office of the Inspector General of the New York City Department of Investigation. (Pl.'s R. 56.1 Stmt., ¶ 49; Pl.'s Dep., at 119-120.) Plaintiff did so. Plaintiff also filed a complaint with the New York Office of the Comptroller. (Compl. IV; Hein Decl. Ex. "B.")

Plaintiff filed this action, pro se, on June 12, 2006. While he has since retained counsel, he has not amended his Complaint.

**DISCUSSION**

Pursuant to § 1983, Plaintiff asserts federal claims for (a) deliberate indifference to medical needs, and (b) excessive use of force, in violation of the Eighth and Fourteenth Amendments to the United States Constitution.   Neither claim survives summary judgment.

## I. Standard of Review – Summary Judgment

To succeed on a motion for summary judgment, a party must show that the absence of material and genuine factual issues dictates judgment as a matter of law.   See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).   In this context, the Court "is not to resolve issues of fact but only to determine whether there is a genuine triable issue as to a material fact." Howley v. Town of Stratford, 217 F.3d 141, 150 (2d Cir. 2000). The "evidence of the nonmovant is to be believed and all justifiable inferences are to be drawn in his favor."   Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

That non-moving party, however, "may not rest upon mere conclusory allegations or denials, but must bring forward some affirmative indication that [its] version of relevant events is not fanciful."   Podell v. Citicorp Diners Club, Inc., 112 F.3d 98, 101 (2d Cir. 1997) (citations and quotations omitted). Evidentiary submissions relating to a summary judgment motion must adduce facts that would be admissible in evidence.   Fed. R. Civ. P. 56(e).

## II. Section 1983

To prevail on a Section 1983 claim, a plaintiff must demonstrate a violation of his Constitutional or statutory rights by a person acting under the color of state law.  42 U.S.C. § 1983.  Defendants do not contest that, at all times relevant to this action, each of the individual Defendants acted under color of state law.

### A. Deliberate Indifference to Medical Needs

Plaintiff claims that Defendants demonstrated deliberate indifference to his medical needs.  (Pl.'s Opp., at 12.) Defendants argue that Plaintiff's failure to exhaust his administrative remedies bars any claim for deliberate indifference to medical needs.  With regard to this contention, Defendants have not demonstrated their entitlement to summary judgment.  Nonetheless, because Plaintiff has not presented evidence of a sufficiently serious deprivation, this claim fails as a matter of law.

#### 1. Exhaustion of Administrative Remedies

The Prison Litigation Reform Act ("PLRA") provides that "no action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).

The Second Circuit has recognized that while the PLRA's
exhaustion requirement is mandatory, "certain caveats apply."
Giano v. Goord, 380 F.3d 670, 677 (2d Cir. 2004).   Courts apply
a three-part inquiry where a "prisoner plaintiff plausibly seeks
to counter defendants' contention that the prisoner has failed
to exhaust available administrative remedies as required by the
PLRA."   Hemphill v. State of New York, 380 F.3d 680, 686 (2d
Cir. 2004).   First, the Court must determine whether
administrative remedies were made available to the plaintiff.
Id.   Second, the court must consider whether defendants failed
to raise or preserve the exhaustion defense or is estopped from
raising it because their actions inhibited plaintiff's
exhaustion of remedies.   Id.   Lastly, if administrative remedies
were available and defendants did not fail to raise and are not
estopped from raising the non-exhaustion defense, but plaintiff
did not exhaust the administrative remedies nonetheless, the
Court should consider whether "special circumstances" have been
plausibly alleged that justify "the prisoner's failure to comply
with administrative procedural requirements."   Id.   Courts
determine "justification" with regard to "circumstances which
might understandably lead usually uncounseled prisoners to fail
to grieve in the normally required way."   Giano, 380 F.3d at
678.

10

Here, the applicable grievance procedures provided for a
three-day deadline for filing a grievance.  (Hein Decl. Ex "K.")
Under these procedures, if a grievance was not resolved through
informal means, an inmate could request formal review from the
Inmate Grievance Resolution Committee, and then appeal three
levels to the Commissioner of Correction.  (Hein Decl. Ex. "J,"
¶ III.B.)

The procedures state that anything under investigation by
the Inspector General is not grievable; nor are "complaints
pertaining to an alleged assault" or "matters outside the
jurisdiction of the Department of Corrections." (Hein Decl. Ex.
"J," II.B.)  Plaintiff was explicitly told by prison staff that
his matter was "not grievable" and that instead he could file a
complaint with the Inspector General.  (Plaintiff's Memorandum
of Law in Opposition to Defendant's Motion for Summary Judgment
("Pl.'s Opp.") 14; Pl.'s Dep., at 114-115.)  In light of these
facts, the Court finds an issue of fact as to whether special
circumstances existed that would justify Plaintiff's failure to
exhaust administrative remedies.

### 2. Plaintiff's Claim

Plaintiff alleges that he "asked for medical attention
repeatedly but, was denied medical attention ... No captain was
notified as requested," and Officer Allen "denied requests even

11

after [Ms. B] informed her that she saw my chest bruise and that I needed a Doctor's attention." (Compl. II.D.)

The Due Process clause of the Fourteenth Amendment protects a pretrial detainee against a state actor's unreasonable deprivation of medical needs.[6] See Bryant v. Maffucci, 923 F.2d 979, 983 (2d Cir. 1991). To establish an unconstitutional denial of medical care, a detainee must prove that prison officials acted with "deliberate indifference to [his] serious medical needs." Smith v. Carpenter, 316 F.3d 178, 184 (2d Cir. 2003) (quoting Estelle v. Gamble, 429 U.S. 97, 104, (1976)). First, the alleged deprivation of care must be, objectively, "sufficiently serious;" this element measures the severity of the alleged deprivation. Id. Second, the plaintiff must "prove that the charged official 'kn[ew] of and disregard[ed] an excessive risk to inmate health or safety.'" Johnson v. Wright, 412 F.3d 398, 403 (2d Cir. 2005) (quoting Farmer v. Brennan, 511 U.S. 825, 837 (1994)).

The objective requirement contemplates "a condition of urgency that may result in degeneration or extreme pain." Chance v. Armstrong, 143 F.3d 698, 702 (2d Cir. 1998) (quotations and citations omitted). Here, Plaintiff's alleged

---

[6] Courts in this Circuit analyze pre-trial detainees' Fourteenth Amendment claims of deliberate indifference to a serious medical condition under the Eighth Amendment standard. See, e.g., Lara v. Bloomberg, No. 04 Civ. 8690 (KMW), 2007 U.S. Dist. LEXIS 95635, at *6-*7 (S.D.N.Y. Dec. 20, 2007); Cuoco v. Moritsugu, 222 F.3d 99, 106 (2d Cir. 2000).

deprivation amounts to swelling, a bruise, and redness. (Defs.'
R. 56.1 Stmt., ¶ 45; Pl.'s Dep., at 96-97).  Plaintiff has not
demonstrated that any of his injuries were "sufficiently
serious" to rise to a constitutional violation; the medical
condition of which he complains falls short of objective
standard.  See, e.g., Davis v. Reilly, 324 F. Supp. 2d 361, 368
(E.D.N.Y. 2004) (finding sprained neck and back and pain in left
testicle did not constitute a serious medical condition);
Rodriguez v. Mercado, No. 00 CIV. 8588(JSR)(FM),  2002 U.S.
Dist. LEXIS 16057 (S.D.N.Y. Aug. 28, 2002) (finding claims of
bruises to head, back and wrists insufficiently serious); Chatin
v. Artuz, No. 95 Civ. 7994 (KTD), 1999 U.S. Dist. LEXIS 11918,
at *11 (S.D.N.Y Aug. 4, 1999) (holding plaintiff who injured
foot so as to require a recommendation of crutches did not meet
type of serious injury contemplated by objective standard);
Veloz v. New York, 35 F. Supp. 2d 305, 312 (S.D.N.Y. 1999)
(holding foot pain caused by fracture, bone cyst, and
degenerative arthritis insufficient to state a serious medical
condition); Malsh v. Austin, 901 F. Supp. 757, 763 (S.D.N.Y
1995) (noting toothaches, mild concussion and broken jaw, and a
broken finger have all been held to fail seriousness
requirement).

      Even if Plaintiff could demonstrate a sufficiently serious
injury, he cannot show a sufficiently serious deprivation.

Because Plaintiff complains about a "temporary delay in the provision of otherwise adequate treatment, it is appropriate to focus on the challenged *delay* ... in treatment rather than the prisoner's *underlying medical condition* alone in analyzing whether the alleged deprivation is, in objective terms, sufficiently serious, to support an Eighth Amendment claim." Smith, 316 F.3d at 185 (quotations and citation omitted) (emphasis in original).

Although a delay in providing necessary medical care may in some cases constitute deliberate indifference, the Second Circuit has reserved such a classification for cases in which, for example, officials ignored a "life-threatening and fast-degenerating" condition for three days, Liscio v. Warren, 901 F.2d 274, 277 (2d Cir. 1990), or delayed major surgery for over two years, Hathaway v. Coughlin, 841 F.2d 48, 50-51 (2d Cir. 1988). See Demata v. New York State Corr. Dep't of Health Servs., No. 99-0066, 198 F.3d 233 (table), 1999 U.S. App. LEXIS 22965, 1999 WL 753142, at *2 (2d Cir. Sept. 17, 1999) (granting summary judgment where plaintiff complained of knee injury in February 1994 and surgery not performed until March 1997).  No such circumstances are present here.

Here, Plaintiff complains of a delay of no more than approximately four or five hours.  "As a matter of law, a wait this brief cannot constitute deliberate indifference to an

14

injury such as Plaintiff's."  Revenell v. Van Der Steeg, No. 05

Civ. 4042 (WHP) 2007 U.S. Dist. LEXIS 17868, at *12 (S.D.N.Y.

Mar. 14, 2007) (holding that fifteen to twenty minute delay in

treatment of fractured finger could not amount to deliberate

indifference); see also Cain v. Jackson, No. 05 Civ. 3904 (LAP),

2007 U.S. Dist. LEXIS 55090, at *18 (S.D.N.Y. July 27, 2007)

("The pain and discomfort that Plaintiff alleges as a result of

the [approximately four hour] delay in her receiving medical

care and prescription medications . . . is simply insufficient

to implicate the Eighth Amendment."); Simmons v. Artuz, No. 94

Civ. 6777 (DLC), 1996 U.S. Dist LEXIS 6061, at *11-*12 (S.D.N.Y.

May 8, 1996) (finding treatment in the evening for an assault

that happened in the morning did not rise to level of deliberate

indifference); Linden v. Westchester County, No. 93 Civ. 8373

(MBM), 1995 U.S. Dist. LEXIS 17204, at *8 (S.D.N.Y Nov. 20,

1995) (holding delay of eight hours in visiting the prison

infirmary insufficient to state a claim of deliberate

indifference).

A "serious medical need exists where the failure to treat a

prisoner's condition could result in further significant injury

or the unnecessary or wanton infliction of pain," Smith, 316

F.3d at 187 (quotations and citation omitted).  Here, Plaintiff

neither alleges nor demonstrates that the delay at issue

resulted in any harm.  See Baylock v. Borden, 547 F. Supp. 2d

305, 313-14 (S.D.N.Y 2008) (finding that even if defendant doctor who examined plaintiff could have sped up process, claim of serious deprivation failed as a matter of law because doctor "did not cause a delay of medical care that placed [plaintiff] at risk"). Additionally, as soon as he told "Ms. B" that he was injured, steps were taken to ensure Plaintiff was taken to the infirmary. There is no evidence that defendants knew of any kind of increased risk, much less acted with indifference to such a risk.

Because the record cannot support a claim of deliberate indifference, Defendant's motion is granted with respect to that claim, which is dismissed.

**B. Excessive Force**

Plaintiff's brief in opposition to summary judgment argues that, in closing the door on Plaintiff, certain Defendants used excessive force, in violation of the Eighth and Fourteenth Amendments. (Pl.'s Opp., at 6.) Because Plaintiff's allegations do not suffice to implicate the Constitution, his excessive force claim fails as a matter of law.

To establish a Constitutional claim of excessive force, "two conditions, one subjective and the other objective . . . must be met." United States v. Walsh, 194 F.3d 37, 49 (2d Cir. 1999) (citation omitted). The objective condition is satisfied if it is "shown that the deprivation alleged is objectively

16

sufficiently serious or harmful enough." Walsh, 194 F.3d at 50
(citing Hudson, 503 U.S. at 8).  This condition is satisfied
"even if the victim does not suffer serious or significant
injury provided that the amount of force used is more than de
minimis, or involves force that is repugnant to the conscience
of mankind."  Id. (citations and quotations omitted).

The subjective condition is satisfied if the defendant has
a "sufficiently culpable state of mind . . . shown by actions
characterized by wantonness." Walsh, 194 F.3d at 49.  "The core
judicial inquiry" for claims of excessive force is "whether
force was applied ... maliciously and sadistically to cause
harm." Hudson, 503 U.S. at 7-8.  While "an express intent to
inflict unnecessary pain is not required," Jones v. Reid, No. 85
Civ. 4515 (PKL), 1989 U.S. Dist. LEXIS 8436, at *14 (S.D.N.Y
July 18, 1989) (internal quotations and citations omitted),
"mere negligence on the part of a prison official will not turn
an ordinary accident into a violation of the Constitution solely
because it occurred with respect to a prisoner."  Id. (citations
omitted); see also Bryant, 923 F.2d at 983 (noting more than
simple negligence is needed for pretrial detainee to allege
deprivation under Fourteenth Amendment due process clause).
Indeed, "[a]n isolated omission to act by a state prison guard
does not support a claim under section 1983 absent circumstances
indicating an evil intent, or recklessness, or at least

deliberate indifference to the consequences of his conduct for those under his control and dependent upon him." Benjamin v. Fraser, 161 F. Supp. 2d 151, 158 (S.D.N.Y. 2001) (citing Ayers v. Coughlin, 780 F.2d 205, 209 (2d Cir.1985)).

The record before the Court is devoid of any allegation or indication of the deliberate use of force.  Plaintiff has not presented any evidence of wantonness, recklessness, or malice on the part of any Defendant; he fails to allege any facts from which a reasonable jury could find that any Defendant possessed a sufficiently culpable state of mind to support an excessive force claim.  Plaintiff admits that he could not, from the distance of his cell, "see [an officer] turn the knobs" to close the door, so he could not see anything that would lead him to believe that Officer Johnston or Bowers closed his cell door on him deliberately.  (Pl.'s Dep., at 44.)  Nor do his allegations give rise to a reasonable inference that the officers acted with deliberate indifference or recklessness sufficient to give rise to a constitutional violation.

Moreover, courts in this Circuit have explicitly held that inadvertent closures of cell doors on inmates do not give rise to Constitutional violation.  See Burks v. Nassau County Sheriff's Dep't, 288 F. Supp. 2d 298, 298-301 (E.D.N.Y. 2003) (plaintiff hurt by a malfunctioning cell door that hit him as he stood in the doorway failed to state a claim under § 1983); Bell

v. N.Y.C. Corr. Dep't, No. 92 Civ. 5919 (PKL), 1993 U.S. Dist.
LEXIS 11038, at *9-*11 (S.D.N.Y. June 11, 1993) (dismissing
inmate's claim under § 1983 where his prosthetic leg was closed
in a cell door because he failed to allege facts from which to
infer a constitutional violation).  Plaintiff has not provided
any reason for which those holdings should not apply here.
Compare Jones v. Reid, No. 85 Civ. 4515 (PKL), 1989 U.S. Dist.
LEXIS 8436, at *14 (S.D.N.Y. Jul. 18, 1989) (denying summary
judgment to defendants where plaintiff alleged an officer
intentionally closed a mechanical cell door on his arm twice;
after the first time, the officer "'stuck his head out' and
grinned before releasing the switch again").

     In sum, Plaintiff's allegations do not suffice to state a
claim of excessive force under § 1983.  Poe v. Leonard, 282 F.3d
123, 145 (2d Cir. 2002).  As a result, the Court grants summary
judgment on his claim for excessive force.

## C. Municipal Liability

     To the extent that Plaintiff purports to state a claim
against the City, such a claim fails as a matter of law.  A
municipality "may not be sued under § 1983 for an injury
inflicted solely by its employees or agents."  Monell v.
Department of Soc. Servs., 436 U.S. 658, 694 (1978).  Instead,
it may be held liable only when a constitutional deprivation is
inflicted pursuant to its policy or custom.  See id.;  DeCarlo

v. Fry, 141 F.3d 56, 61 (2d Cir. 1998).  To set forth a

cognizable claim for municipal liability, a plaintiff must plead

and prove "(1) an official policy or custom that (2) causes the

plaintiff to be subjected to (3) a denial of a constitutional

right."  Batista v. Rodriguez, 702 F.2d 393, 397 (2d Cir. 1983).

While a plaintiff need not "show that the municipality had an

explicitly stated rule or regulation, a single incident alleged

in a complaint, especially if it involved only actors below the

policy-making level, does not suffice to show a municipal

policy."  DeCarlo, 141 F.3d at 61 (internal citations omitted).

Plaintiff's Complaint and his filings in opposition to

summary judgment are devoid of any allegations against the City;

he makes no mention of the City beyond labeling it as a party.

As a result, Plaintiff has failed to plead a viable claim for

municipal liability, and to the extent that he intended to bring

any claims against the City, those claims are dismissed.

**D. Claims Against the DOC**

To the extent that Plaintiff asserts any claims against the

DOC, those claims fail as a matter of law because, as an

organizational subdivision of the City, the DOC is not a suable

entity.  Echevarria v. Department of Correctional Servs., 48 F.

Supp. 2d 388, 391 (S.D.N.Y. 1999) ("Settled caselaw . . .

establishes that suits against the DOC are suits against a non-

suable entity and are properly dismissed upon that basis.")

**E. Additional Claims**

Plaintiff does not explicitly plead any state law claims. To the extent that his Complaint can be construed to do so, because the Court has dismissed all of Plaintiff's federal claims, it declines to exercise supplemental jurisdiction over any state law claims.

CONCLUSION

For the foregoing reasons, the Court GRANTS Defendants' motion for summary judgment, dismisses Plaintiff's Complaint, and directs the Clerk of Court to close this case.

SO ORDERED:

_____

**BARBARA S. JONES**
**UNITED STATES DISTRICT JUDGE**

Dated:    New York, New York
          March 9, 2009